We'll hear argument next in Case 2915, Unicolors v. H&M Hennes & Mauritz. Mr. Rosenkranz. Thank you, Mr. Chief Justice, and may it please the Court. The question here is, what state of mind a copyright infringer must prove to establish that an applicant included inaccurate information, quote, with knowledge that it was inaccurate? The answer is that it requires subjective awareness of what of the inaccuracy itself. The same standard applies whether the inaccuracy was because the applicant misunderstood the law or misunderstood the facts or included a typo. Simply put, you don't have information, excuse me, you don't know that information is inaccurate. If you honestly believe it to be accurate, the safe harbor of Section 411B does not suggest an exception when that belief exists because you did not predict where the law would go or you did not know how the law applies to the facts. This Court can get to that result through two separate routes. The first is the plain text and the second is a presumption. No court in a century had invalidated a copyright registration based upon an innocent legal error and Congress is presumed not to have radically changed that rule by hiding that change in the word knowledge. Like the courts, Congress considered it more important to give authors and artists an effective remedy against IP thieves than it was to demand perfect compliance with complex legal requirements in a form. The Ninth Circuit's rule will wreak havoc every time a court decides an unsettled question of law. It would cast doubt on the validity of countless registrations. Now there are three specific points to make about the text here. The first is that Section 411B starts with a default rule that a registration is valid quote, regardless of any, any inaccurate information. So that means without regard to whether that information is a fact or a legal conclusion. Second, Section 411B is pretty unique among the statutes that this Court has encountered in the past. In that it's not requiring knowledge of several elements and all you have to do is figure out which one needs to be knowing. But here it requires knowledge of something very specific. It inquires knowledge that the information reflected in the application is wrong. Not knowledge of what happens to be right or wrong in the world outside the application. Not knowledge of things that might help you figure out that the application is wrong. Not the ability with reasonable diligence to figure out whether the application is wrong, but knowledge that there is wrong information on the application. If you don't have that knowledge, the belief of a wrong thing on the application, you don't have what Section 411B requires, period. Nothing in this statute suggests that it matters one bit why you don't have that knowledge. Well, but at the beginning, I'm looking at page 30 to 31 of your brief, and you're talking about the Copyright Office, and you say this good faith has to be based on, or they say the good faith has to be based on a reasonable interpretation of the law. So, Your Honor, the government, of course, will respond to what the Copyright Office meant there. We were quoting it for the rejection of the rule that there's an exception for law, not for that reasonableness insert. They weren't doing an exegesis of 411B. They were just rejecting the proposition that there is a carve-out for reasonableness or a constructive knowledge requirement. I was saying there were three points. Let me just get to... Can I follow up on that point? Of course, Your Honor. In the SG's brief, page 21, footnote 3, the last sentence, they deal with reasonableness and say, although Section 411B does not impose a freestanding reasonableness requirement, the unreasonableness of a registrant's purported view of the law may support an inference that the view was not sincerely held. Do you agree with that? I do, Your Honor, in two ways. First, knowledge always, in a statute, incorporates willful blindness. That's the backdrop. So, if you demonstrate that the position is so ridiculously unreasonable that the copyright applicant is going to be treated as if he had known the law, that is, he was blinding himself to what the rule is, absolutely. But secondly, you can prove knowledge through circumstantial evidence, and that is really a stark difference between... Excuse me. It provides sort of a bridge between the constructive knowledge requirement that my friends on the other side are suggesting and what the law already interprets knowledge to be. But I was going to mention the third textual indication of what knowledge means here, and that is Congress understood the word information to include conclusions of law. We know that because Section 409, two sections earlier, provides a list of items that an and Paragraph 10, all of those items as information, the list includes a whole bunch of legal conclusions. Paragraph 4, is it a, quote, work made for hire? Paragraph 9, is it a compilation or a derivative work which befuddles even the greatest experts? Paragraph 5, how the claimant obtained ownership of the copyright? I would also add that it is telling that H&M does not deny that our reading comports with normal parlance. It also happens to be the way Black's Law Dictionary and the Model Penal Code define knowledge. Mr. Rosenkranz, these are all interesting arguments about the question that you and the SG have now decided to address. It's not exactly the question on which you sought cert and that we agreed to review. And I found dealing with decisions in this case and the briefs in this case extraordinarily frustrating. The question concerns an inaccuracy, an alleged inaccuracy in the application. So I thought maybe I would take a look at the application. Where can I find it? Your Honor, the other side has alleged in the Ninth Circuit found below that the inaccuracy in here's Well, where is the actual application? Is it anywhere in the record of this case? It's not in the record of this case, Your Honor. It's in the back of the brief. Now, bear in mind that this issue came up on the last day of trial. H&M had never raised this issue before, and only on the basis of testimony that it elicited without even telling us what the testimony would be about did they move to invalidate the registration. Well, it does seem to me there must be, that there is a, it appears that there's a very glaring inaccuracy in the application, insofar as it supposedly stated that all of these on January 15, 2011, I believe is the date. Were they published at all? Yes, Your Honor. The publication includes conveying to an individual customer. So if they were, so the answer is yes, they were published. But I do Well, I don't know. Section 101 of the Copyright Act defines publication as the distribution of copies or phonorecords. I'm not dealing with phonorecords here. Copies of a work to the public by sale or other transfer of ownership or by rental, lease, or lending. Did that occur here? Yes, Your Honor. With respect to all of them, if you're speaking about the confined designs, all of them were published to a member of the public on that publication date. And by the way, there are cases What was done with them on that publication date? They were shown to the public? The record doesn't reflect precisely how they got into the hands of those individual customers. Again, the gaps in the record Does that constitute publication? Here I have some designs. I'm showing them to you. Oh, yes, Your Honor. There are cases, in fact, that have, in which courts have addressed whether a registration is invalid because someone did not realize that giving to just an individual who is outside the four corners of the company entails publication. So yes, showing to a member of the public to offer for sale is showing to the public. But I do want to get to Your Honor's original question, which is about the question presented. The question presented has always been about the state of mind under 411b1's text, right against the backdrop of the historical context. And I think Well, yeah, it's about the state of mind. But in the petition, it was about indicia of fraud or material error. And now it's been changed into something else. Your Honor, indicia of fraud includes, I mean, what is the court indicia of fraud? A knowing misstatement of material fact. But knowing misstatement is an indicia of fraud. And I would, I would hasten to add it's important that you underscored indicia of fraud. Because H&M's entire argument was that we changed the question presented because the original question was about intent. The original question was not about intent. And the petition repeatedly refers to knowledge and subjective awareness. Look at page 8, which is the first paragraph of the reasons for granting the writ. It complains, quote, there was no evidence that Unicolors knew, knew, language directly out of 411b, that it was making an error when registering its group of designs as required by the Pro-IP Act. We said it again at petition page 5. We talked about intent to defraud or knowing falsehood. We said it again at petition page 15, note 9, and petition page 13. And I would note that H&M does not dispute that the position we articulated in our reply brief is exactly the same as the merits position we took for the court. I understood the Ninth Circuit to find that the inaccurate statement was an implicit representation that all of these designs constituted a single unit of publication. Yes, correct, Your Honor. That is what the Ninth Circuit found. And do you understand that the completion of this form in the way that it was completed to constitute an implicit statement about that? I personally do not, but as this case got to this court, both parties assumed for purposes of argument before this court that the Ninth Circuit got that right. Yes, we did not appeal that piece of it. We appealed the logic that the Ninth Circuit applied once it had drawn that conclusion. I did want to make sure to address the second route to get to the same result, which is to invoke the presumption that Congress— Before you do, can I ask if you—if we agree with you on this argument, just to be clear on the roadmap, the Ninth Circuit on remand would have to decide whether, in fact, you did have knowledge or not. Is that correct? No, Your Honor. The district court already found that in an undisturbed— So you think that's not open to the—the Ninth Circuit hasn't reviewed that, correct? And H&M—so H&M appealed that, whether, in fact, we had subjective knowledge. It does seem to me that SGE says vacate, you say reverse. I think the vacate and remand, because it seems to me that issue is still open. You know, I don't know if there's anything to it, but technically it seems open. Sure enough. I mean, H&M's primary argument below was that we lied when we said that it was not a single unit of publication, and that lie would have to entail that the applicant did not have the subjective knowledge that that was not the law at the time. So sure, the Ninth Circuit would have to decide that. But I did want to address the common law way of getting to the same result, which is the presumption that Congress would not have hidden in the word knowledge an intention to override a century of common law. Common law had a clear answer to the core question here. You don't strip IP rights for a misunderstanding that is based on a legal misunderstanding. We cited many cases excusing all sorts of legal errors, and H&M does not address any of them. Courts, sure, they had different formulations, but they all got to that one answer in different ways. They all got to that same answer at an irreducible minimum. The doctrine required subjective knowledge of an inaccuracy. Honest legal errors were not a basis under common law for invalidating copyright registrations, and it's telling that H&M could not find a single common law case in which a court distinguished inadvertent legal mistakes from inadvertent mistakes of fact, nor anyone that was applying any common law case that was applying H&M's proposed constructive knowledge standard. Some courts may have added additional elements, but those additional elements never subtracted from that bare minimum. And the last thing I would say is that it makes no sense that Congress would ever have wanted to do this. Why would Congress have wanted to punish lay people for legal mistakes and not punish them for factual mistakes, especially since lay people are way more likely to understand the facts and know them than the law? Congress made a sensible decision not to strip authors of— I understand you want to make this about lay people, artists, and poets, but there's an argument here that your client is not an artist or poet, that your client is a patent troll. I'm not making the allegation. But if I have a concern about patent trolls, how do I describe a truly innocent mistake of law from one in which a sophisticated party with the capacity to confer with lawyers makes a mistake that they could have easily checked? Well, Your Honor, so— Now that's—the premises there are all subject to attack because this is the first time that the single publication rule was announced, so—but let's talk about the trolls. So I do want to talk about the trolls, both the allegation and—but I will start with the core legal question that you're asking. That's the beauty of willful blindness. A constructive—if I may finish the answer, Your Honor—the constructive knowledge reasonable person test would apply across the range of every possible person. It's not a good fit for the wide range and variability of the sorts of applicants that file copyright applications. If—excuse me—if H&M had evidence that our client was willfully blind to the truth about what the single unit publication rule meant, when we were following guidance that was actually pretty clearly on our side, but at worst, ambiguous, they can present it, but they had none. I do have to get to the question of—if I may, Your Honor— Maybe— Of course. —we'll go to the second round there. Thank you, counsel. Justice Thomas? Yes. Mr. Rosenkranz, I'm still stuck a bit on the question presented. In your question presented and your cert petition, you refer to whether or not 411 requires a referral to the Copyright Office where there is no indicia of fraud. In your new question presented, you focus on whether that knowledge referred to in the knowledge element precludes a challenge to a registration, whether the inaccuracy from the applicant's good faith misunderstanding of a principle of copyright law. Those are two different questions. If you—and why shouldn't we dismiss this as improvidently granted since the focus in the initial QP is on fraud, not on knowledge? Well, so, Your Honor, there are two pieces to the question. The first is you asked about requiring referral. Nothing in the petition or the brief in opposition or the reply talks about requiring referral. We were debating the basis on which a referral was made, which is the state of mind. The second piece, Your Honor, was requiring indicia of fraud. It was called the doctrine of fraud on the Copyright Office. We have in 411B all of the core elements of fraud, a knowing, misstatement of a fact that is material. So the fact that 411B doesn't specifically use the word fraud doesn't mean we changed the state of mind. Well, if you were accurate then, why didn't you simply retain your question present? Your Honor, we did what advocates do before this Court all the time and what's permitted under Rule 24.1. We focused the question presented more directly on the key vulnerabilities of the Ninth Circuit's opinion, which was reflected in the by-play between the cert petition and the brief in opposition as to what the question presented was. And certainly by the time this Court got to the reply brief, it was very, very clear. On page one of that cert reply, we were talking about the critical, what we called the critical legal issue, which was the Ninth Circuit's holding carving out mistakes of law from 411B's safe harbor. Justice Breyer? Justice Alito? In your petition, you said that the Ninth Circuit's misinterpretation of Section 411B widened a dire circuit division that must be addressed. If you had framed your question in the petition the way you framed it in your brief, could you have alleged that there was a dire circuit split? Yes, Your Honor. The circuit split alleged in the petition was the Ninth Circuit against the Eleventh Circuit. That was it. The Seventh Circuit had some good language as well. It is the same exact disagreement. The Ninth Circuit says knowledge of the law is an exception to 411B. The Eleventh Circuit in Roberts v. Gorey, the case that we featured, said very clearly that knowledge of the law is not an exception. It said rappers understand lyrics and poetry. They don't understand copyright law. All three issues that were the basis for the misstatement in Roberts were legal issues. One other question. In what way could you have been benefited by attempting to register all of these designs on one application as opposed to using a separate application for each design? It reduced the fee that you had to pay. Could it have helped you in any other way? It could not have helped us in any other way, Your Honor. That's exactly why Congress wrote the statute the way it did. There's very little benefit in litigation from anything that ends up being wrong on an application. But in this one in particular, let's just be clear. Under the Ninth Circuit's theory, we saved $65 by not dividing the confined from the unconfined. But we didn't win any litigation advantage or any other advantage. Justice Sotomayor? Thank you, Counsel. Ms. Patterson? Mr. Chief Justice, and may it please the Court. Congress has set out a default rule to preserve the validity of copyright registrations even if they contain some inaccurate information. Under Section 411B, such a registration remains adequate to support an infringement action unless the registrant has included inaccurate information in its application to the Copyright Office with knowledge that it was inaccurate. Now, with respect to that key knowledge condition, the Ninth Circuit has set out an unprecedented rule that could jeopardize many thousands of copyright registrations under conditions never before thought to give rise to a risk of invalidation. And that's because the Ninth Circuit has decided that a registrant's knowledge of an inaccuracy is decided by looking solely at that registrant's factual knowledge even if the inaccuracy at issue arises solely because of a law. And that was error. We think that in order to risk invalidation of your registration, a registrant needs to actually be aware that it's submitting an inaccuracy, and that that is just as true of legal inaccuracies as it is of factual ones. I welcome the court's question, or I'd like to turn first to the Ninth Circuit's rule as actually applied in this case. I think there's some suggestion by a respondent of an alternate rule, a constructive knowledge standard rule. And in fact, that appears to be the sort of front-line defense of what the Ninth Circuit did here. That standard appears nowhere in the Ninth Circuit's decision. The Ninth Circuit did not say, Well, we think unicolors should have known the correct requirements to submit a single unit of publication and flouted them, and therefore we are going to hold them to their error. The Ninth Circuit said that it was irrelevant whether they knew what the requirements to submit that type of application were, whether it knew of the bundling requirements that the Ninth Circuit decided exists under the regulation. So even if this court decides that some form of constructive knowledge is necessary, that would require a remand. Well, what do you think of the constructive versus actual debate? We think it needs to be actual knowledge, Your Honor, and that's for essentially three reasons. The text of 411B itself, the text of the rest of Title 17, and the context in which Congress enacted Section 411B. So just looking at the word here, it's just knowledge. It's unadorned by any constructive knowledge standard. Now, in the rest of Title 17, when Congress wanted to impose a constructive knowledge standard, it did so very carefully. We cited a list, I think Petitioner added to it, of various provisions where Congress had said things like knew or should have known, had reasonable grounds to know, acted in deliberate disregard or recklessness. We think that shows that if Congress had wanted to have a constructive knowledge standard here, it would have said so. And that's not only because it didn't have any indicia of a constructive knowledge standard, but because in the copyright context, Congress has carefully calibrated the type of constructive knowledge standard it wants. You know, having reasonable grounds to know, being aware of actual facts or circumstances, which are written into some of these standards, is quite different than acting in deliberate disregard or recklessness or ignorance. Willful blindness wouldn't be sufficient. We do think willful blindness is a form of actual knowledge, so that by using the word knowledge, we think Congress meant the real sort of knowledge, actual knowledge, and that would, under the principles announced in cases like Global Tech and Intel, of course, carry with it willful blindness. But on the theory that willful blindness you really do know, and that's why you're not looking, that's the theory? Yes, Your Honor, and I think that there's some, I think it's in Global Tech, the court, you know, posits that you can think of it as an exception to actual knowledge or you can actually think of it as a form of knowledge. Of course, to reach willful blindness, you have to be aware that there's a high probability that a certain fact or condition is out there and take some steps to avoid coming into, you know, present awareness of it. So I think regardless of how you conceive of it, willful blindness, if a defendant could show that a registrant had willfully blinded themselves to either the legal requirements or the underlying facts of its conduct, yes, I think that you could satisfy 411B1A. How about unreasonableness? Pardon? How about unreasonableness? No, Your Honor, I think that's where the respondents suggest a constructive knowledge standard that you have to have a reasonable basis for your subjective belief. We don't think that's the right standard. We think that the, if you honestly believe or are honestly just ignorant of the exact definition of, say, publication or single unit of publication registration requirements, that simply being sloppy or negligent in filling out your application should not give rise to a risk of your registration being invalidated, which does carry... Is that the interpretation that the Copyright Office has adopted? It talks about a reasonable interpretation of the law. I think you're referring to its response in the Fashion Avenue case, and I think if you just read the last few pages where that reference comes up, it's clear that the Copyright Office was not trying to explore the parameters of what knowledge might mean. It was simply referring... It comes right after the reference to the gold value case. That's the Ninth Circuit's predecessor decision to this one. I think Respondent is probably correct that under gold value, the Ninth Circuit left itself some wiggle room for the type of constructive knowledge standard that the Respondent is pressing here. And so when the Copyright Office there referred to a reasonable basis, I think it was just echoing what the Ninth Circuit had already said. Ms. Patterson, I read earlier page 21, footnote 3, the last sentence of your brief where I thought you did a nice job of bridging the reasonableness into the knowledge requirement, so I hope you still agree with the last sentence of footnote 3. Absolutely, Your Honor. We think if somebody is adopting just a manifestly unreasonable interpretation of either copyright law or a story about what their own conduct was or what they meant it to be, of course an infringer can tell a fact finder that's evidence that they either actually had knowledge and they're just lying about it or that they were willfully blinding themselves to the truth of either the facts or the law. And it is important to remember that these types of scienter determinations are going to be made by a fact finder. You are free to make your arguments that someone is not telling the truth when they disclaim knowledge of including inaccuracies. The only question is what standard should we apply when we're looking at that scienter requirement? And here where Congress has specified very precisely the thing that you need to know, knowledge that the information included in your copyright application was inaccurate, we don't think it makes any sense to take the law into account and what it means to be inaccurate, to take the law into account and what it means to be information, but then all of a sudden, at the knowledge inquiry, to look only at the facts. That just does not make sense, and it has never been the law. Throughout many decades, under what was often called somewhat colloquially the Fraud on the Copyright Office doctrine, there are variations on how courts applied this doctrine, but the sort of through line are the two that ended up in 411B, a knowing misstatement and a materiality that it actually could have affected the registration process. So never before could a court invalidate your registration and not even let you get in the courthouse door because they thought you should have known the law that it has now announced when you were filling out and checking boxes about published or unpublished derivative work, not derivative work, works for hire, not works for hire. These are not self-evident concepts, to say the least. Just for my own edification, what is required for the publication of a design? Under 101, the basic rule is that if you distribute it to the public by sale or other transfers of ownership, or you distribute it to a group of persons for the purposes of further distribution or sale, that will constitute publication. What if you just show it to potential customers? That's all you do. You just show it to potential customers or potential salespeople. Is that publication? We are wading into the depths of Chapter 1900 of the Compendium of Copyright Law, which is devoted entirely to the various scenarios that can constitute publication or not constitute publication. I don't know the answer to your Honor's question, and the answer might depend on other facts, not in the hypothetical, like whether or not ready copies were available to distribute if somebody took you up on your offer to sell the design. I think this just highlights that it's often not going to be self-evident to a registrant whether or not they have unwittingly entrenched a legal inaccuracy in their doctrine. What do you understand to have been the inaccuracy in the application here? I understand there to be two possible inaccuracies. One is the publication date, whether or not all 31 designs were actually published on that date. We understand there to be something of a factual dispute as to whether or not all of the designs were placed in the showroom and some were pulled back later, what exactly a confined design meant, and we're not prepared to opine on that question. We leave that to the parties. The second is an implicit representation. This is the one that the Court of Appeals focused on, that the group met the requirements for the group registration option encompassed in a single unit of registration regulation. Do you think it's fair to infer that from having filled out the form the way it was filled out? I think it's fair to infer that they thought they could register them all as a group, as a single unit, yes. Last question. I'm sorry for these technical questions, but we do have a concrete case before us in addition to this interesting legal issue. What would be required for designs to constitute a single unit of publication? I think if all of the designs had the same copyright claimant, here, Unicolors, and they all had been published on the same date, published together, that's a start. As of 2014, the Copyright Compendium has clarified that to avail yourself of that group registration option, it actually needs to be bundled together as a physical unit. The example given is something like a board game. If it had independently copyrightable elements within the board game, you know, the design of a board, an instruction booklet, figurines, you could accomplish a registration of all of those potentially severable copyrights through one registration. I will note that in 2011, when these registrations were made, the bundling requirement, which we agree exists, and which the Ninth Circuit found, and which is now entrenched in our Compendium, had not been written into the guidance that we give registrants. In your brief, you say that the case should be vacated and remanded for further proceedings. Does that include proceedings in the Ninth Circuit on whether they agree with the district court, I guess, that there was or was not knowledge here? Yes, Your Honor. We think the Ninth Circuit has not yet had an opportunity to apply the correct CNTR standard and that it would need to look back at the district court, look at any findings the district court may or may not have made, I understand that's the subject of some dispute, and decide whether or not the record here supported a finding of the requisite CNTR. Ms. Patterson, does the government have a position on H&M's dig arguments? Not a bottom-line position, Your Honor. I will note that we at least were not surprised by the contents of Petitioner's opening brief, and we do think there is a circuit split here. This case would have come out differently in the Eleventh Circuit, and we do think that the Ninth Circuit's rule is wrong, and wrong in a way of significant practical importance to the registration system. We want registrants, we want copyright holders to be able to sue for infringement, to not be turned away from the courthouse door because they got a complicated legal concept wrong, even if they were proceeding in good faith, even if they were a little sloppy in filling out their application. That type of error can be rebutted during the substance of the litigation. You're not stuck with all of those facts listed in the copyright registration. We just think that they should get a chance to make out their case of infringement. So we do think there's a split. We think it's important, but we presume the court knows best the parameters of the question on which it granted certiorari, so we would leave that decision to the court. Thank you, Counsel, Justice Thomas. Okay. Thank you, Counsel. Mr. Shrews? Thank you, Mr. Chief Justice, and may it please the Court. When the Copyright Office registers a claim, it takes information from the application and puts it on an official certificate. That certificate confers litigation privileges, including access to statutory damages and attorney's fees. If information provided by the applicant  those litigation privileges are not revoked, and the application is not revoked. subject to one important exception. The exception applies only if the inaccurate submission caused the Copyright Office to register a claim that would otherwise have been refused. And even then, the copyright owner only loses litigation privileges if it included the inaccurate information knowingly. In this case, Unicolor has convinced the Copyright Office to register an ineligible collection by inaccurately listing a single date of publication for 31 unrelated designs that were published separately on different dates. Yet here, Unicolor insists that it should retain its litigation privileges because its inaccuracies were allegedly the result of its mistaken understanding of the law. Even if that argument were properly presented, it's not, and I'd like to address that a little bit later, it's wrong on the merits. Section 411B doesn't excuse mistakes of law at all. Mistake or ignorance of law is no defense unless a statute explicitly indicates otherwise. Section 411B does not, and for good reason. It would remove the incentive for applicants to engage diligently with the Copyright Office. At a minimum, 411B doesn't excuse unreasonable mistakes. Courts regularly interpret knowledge to include constructive knowledge and context compels that reading here. I welcome the Court's questions, otherwise I will begin with our argument on the object of knowledge in 411B, that it extends only to the facts that render the information inaccurate. Could you go back to the change in the question presented and comment on Mr. Rosenkranz's argument? Certainly, Justice Thomas. So I want to comment on two levels. One has to do with what are the inaccuracies, what was argued and what happened, and then the other is what was fairly included in the question presented. So I think I'm going to take them in that order because I think it will be clearer, I hope. So we alleged, and I don't think this is controversial, that Unicolors... It's not controversial that we alleged it, that Unicolors knowingly misrepresented that all 31 designs were published on January 15, 2011. You see that in our red brief. We cite where we alleged it, PADAP 9A. That's what the Court of Appeals said. Unicolors responded that it did publish all of the designs on that date, as a matter of fact, because that's when they placed them in their showroom. The District Court agreed with Unicolors. The Ninth Circuit agreed with us. You don't need to take my word for it because it's in the petition. If you look at page 5 and 6 of the petition, this is very important, what my friend wrote was that Unicolors' registration indicated that 31 designs were first published on January 15, the date on which the group was placed in Unicolors' showroom for customer viewing. Then it continues. There's no evidence in the record that any of the designs were not published with the rest of the group. In other words, put on the showroom on that date. Factual point. It continues. Despite a lack of any evidence, the panel concluded that the designs were not, the confined designs were not placed in the showroom for sale at the same time. This was a factual dispute where the Ninth Circuit agreed with us. Now, I admit, the Ninth Circuit also found a second inaccuracy. It found that to register a collection, they have to be all published on the same date. No one disputes that. But they also have to be published together. That's this bundling issue. For the life of me, I can't figure out how it's implicated by this case because they just weren't published on the same date. This alleged mistake of law, I don't see how it's implicated. But yes, it is true that they were not published together. So now Unicolors claims that they misunderstood the bundling requirement. They've never claimed that they misunderstood the requirement that everything has to be published on the same date or the criteria for it. That was a pure factual fight. So to your question, Justice Thomas, we get the cert petition. The cert petition cannot be fairly read, with all due respect, as encompassing this knowledge question for a number of reasons. First, the Circuit Division, the dire Circuit Division, was only about intent. Please, go look at the Eleventh Circuit's decision in Gordy. It made clear that an intent to defraud requirement requires more than subjective knowledge of inaccuracy. It relies on a pre-2008 case original appellation that takes an intent to deceive. You have to have the purpose of misleading. None of the other cases cited in the petition, none of them on the circuit split, had anything to do with knowledge or awareness. That's number one. Number two, all of the few mentions of knowledge... Can I interrupt you on number one? I'm not sure how much of a difference there really is in this context. There might be a difference between knowledge and intent to defraud in other contexts, but in this context, I mean, how is it that a registrant knowingly misrepresents information on the application and does not intend to defraud? So I think there's a big difference. I want to be clear about our position on this. So whether or not the intent to deceive is a separate requirement has tremendous practical significance. Because if it exists as a stand-alone separate requirement, you have what Unicolors argued here and what they have argued respectfully in many other cases. They can say, well, even if you prove that we were subjectively aware that it was wrong, you know, we didn't think it mattered. You know, we didn't think it was material, so we didn't have the intent to deceive. That's essentially what they argued in the Burlington case when they didn't put the leopard print in. So I agree that it doesn't matter in the sense that you described, Justice Kagan, but it matters in a very important other sense, which is if it's a stand-alone requirement, it gives a very powerful argument to plaintiffs. And Unicolors always argued that this was a stand-alone requirement. This is why you won't find a single word, a single word in any lower court brief about the object of knowledge, the scope of knowledge. This was never being disputed. All of the fights about fraud on the office, whether there's an intent requirement, they assumed that knowledge was done. It was apart from knowledge, do you also have to have the purpose of defrauding? I guess I'm not understanding that. If you know that there's a material misstatement of law in an application you're submitting to the office, how do you not have an intent to deceive? You may not believe it's material. In other words, you include something that's wrong. It is material, but you don't think so. Turns out it was material. The office would not have registered your claim if they had known. If they're under the 11th Circuit rule, this is the circuit split, the 11th Circuit would say, well, maybe you knew, but you weren't intending to defraud, you didn't have the purpose of trying to deceive. If you look at the Gordy case at 1030, it says the applicant must have the required scienter of purposeful concealment. Appellees have never proffered an argument as to why appellants would attempt to deceive the copyright office. While all of these inaccuracies are not insignificant, none appear to have been made with the scienter as outlined in original appellation. In usual mens rea, when you have knowledge that certain consequences are practically certain to ensue, that is viewed as equivalent to intent. I think that points up at the fundamental problem with a good faith or subjective standard, right? There is enormous daylight between whether it's willful blindness or whether it's the point that you just made, a situation where it's obvious that you should have known. Well, I guess I'm not... This seems a little out there to me just speaking for myself. There's a circuit split. It's how to interpret the statutory language. It's mens rea question. Knowledge and intent when you know that something's certain to result. Kind of the same thing. Usually I don't think you disputed that just now. It's a really important question. Got everything in front of us. I mean, it just seems far-fetched to me. So I will end this thread by saying the following because if it doesn't move you, then we'll have to agree... I'm just speaking for myself. But I think what would encapsulate my position is the 11th Circuit relied on a common law case that has a requirement that everyone agrees, including the government, is not in this statute. It relied on a case that said there is a freestanding additional intent requirement. You go look at that and you tell me if you honestly believe that that's the same thing, that's the same issue. I just don't see how you can... That goes to whether there really was a split or not. The case is here. And what they said was there is no indicia of fraud. Now, fraud may have a bunch of elements of it. But one of the things is if you don't know that what you're saying or doing is false, it's not fraud. So now they're saying, well, that's the part of it that the 9th Circuit expressed a view about, and the view that they expressed about it was wrong. Okay? That is what I take as their argument basically to be. And you would say in response to that, what? That the 9th Circuit didn't do that? Or that it has nothing to do with this case? Or what? I'll say a couple things. So on the issue of... Because my response is different depending on the context. So as to fairly presented, what I would say is that's just not true. Yes, it is... Yes, indicia of fraud could mean that, but it wasn't used that way here. If you look at the reference to knowing falsehood that my friend mentions, it was used as a synonym for intent to defraud. And that's hardly surprising because if you look up falsehood, it means lie. And lie is defined in the dictionary as a statement with intent to deceive. So that's my argument as to why it's not fairly included. Now, as to the merits, because you asked a different question, which is, what did the 9th Circuit do here? My response is the 9th Circuit, in the short portion of its opinion, when it said there is no intent to defraud, didn't talk about knowledge at all. It was clearly treating it as a freestanding issue. And it said, just like the law professors who are on our side, there is... Congress did not codify that aspect of... I'll look at it. I'll look at it and see. I have a question on the merits too. And sometimes you have to forgive what... Sometimes I get carried away in my examples. Me too. But the example I'm thinking of is... And the reason I ask it is because this, to me, is a rare case, not to others. It is a rare case where the language and linguistics actually resolve it. All right? Now, you... All right. The... Now, imagine... On object of knowledge or on scope, or both? Let's see. Okay. Don't argue. Maybe you shouldn't... Maybe I shouldn't ask it. Suppose we looked around and a bird flew back there. And I say, my God, it's a scarlet tanager. And you say, no, it isn't. It's a northern oriole. I have made a mistake. You are right. Okay? Now, there are two reasons I might have made a mistake. One, I saw a flash of yellow, but it wasn't yellow. It was red. And you saw it. The second reason is we both saw exactly the same thing, but I don't understand the right use of the label. We made a mistake of whether it's a tanager or an oriole. I made that mistake, not a mistake in what I saw. How would we resolve our differences? We would call in an ornithologist, I guess. Now, I raise that example because this seems exactly the same thing. It isn't a bird, but it is the word single unit of publication. And we could make a mistake, you see, in what happened in the world, or we could make a mistake in how we apply the label. And in this instance, if we make a mistake as to how we apply the label, we call in a lawyer or a judge. So the difference really is between calling an ornithologist and calling a lawyer or a judge. And of course, my question is, who cares? And why should the fact that we call the latter thing a question of law, but not the former thing, make any difference whatsoever to the proper solution to this case? So as I understand all of the birds and the structure there, that largely goes to what I'm calling the object of knowledge. So I want to take that first, but I think scope of knowledge is a separate issue because first you have to assess what is it that you need to be aware of, and your two buckets go to that, and then there's a question of what type of awareness. So I think they're separate. So the reason why I think it matters is there is a long-standing background presumption that unless there's something in the text of the statute that indicates that you're supposed, to your example, you're in the second world, that you're supposed to apply the fact to law and that's the thing you're supposed to know, that's not the rule. Congress legislates against that. And there are tons of civil and criminal cases that apply this. I think the best one for us probably is German. Okay, so let's take a look at German. Whether something's a bona fide error, obviously that turns on subjective knowledge, right? You can't, an error is you believe something is true when it's false. Bona fide is did you hold that belief? The only question before this court in German was knowledge of what? Is it bona fide legal error, does that count? Or is it only a bona fide factual error, which is in a sense a variant of the, it's not exactly the same because they're discrete categories, but on one level it's a variant of what you ask. And as the dissent pointed out, the statute talks in terms of a violation, which denotes a legal infraction. But seven justices said nope, it doesn't excuse legal errors because of the background presumption. I would submit if that text wasn't enough to override the presumption that we're in one category as opposed to the other, this text certainly doesn't. What about the word information? So, I mean, that encompasses legal information, factual information, right? Absolutely. But our position on that is that merely requiring knowledge of something that can turn on a legal definition is insufficient to overcome the presumption. And that's McFadden. If you look at McFadden... We have cases like Liparota and the other side in the brief where the legal part is folded into the statute, and their argument is here, the word information does the same thing. And I take your point, ignorance of the law is no defense, is an old principle. It's got a lot less force in regulatory areas, number one, but it especially has less force when the statute itself, like Liparota, folds the legal portion in. So, your response on information. So, a few responses to that. So, the first is you said Liparota and the other cases. There are no other cases. Well, no. They cite Safeco, McLaughlin, Rehave. Let me take them one by one. Right. Liparota's different. And your question I want to answer about Liparota, the other cases don't help them at all. Let's take Safeco. The statute in Safeco imposed liability on any person who willfully fails to comply with any requirement under this subchapter. You obviously can't willfully comply with specifically identified laws if you thought you were in compliance. That's the whole point. And we argued this. We explained, if you look through the Copyright Act, you'll see many examples where Congress used the word willful. You'll see many examples where they specifically identified the law or the application of law to fact that you needed to know. I want to get to Liparota, though, because what I'm saying now doesn't... That's a problem. Well, I don't think it's a problem. I think that case is different. But so Safeco? Totally different. McLaughlin? Same thing. The opening sentence of that opinion, the question presented concerns the meaning of the word willful. Rehafe? It's a statute that required knowledge that you were unlawfully or illegal in the United States. None of those cases help. They have Liparota. Here's what I would say about Liparota. Can we just pause on Rehafe? Why doesn't that help them? Because it did one of the two... It had one of the two textual cues that we explain evinces this. It specifically applied knowledge to that you were unlawfully or illegally in the United States. That's not what's happening here. Even in a case like Intel that this Court had two terms ago, the statute there said you had to have actual knowledge of the breach or violation. And the government came in and in exchange with you, Justice Kagan, when you asked, well, what does it mean? Do you have to know the law? They said, no, no. Every circuit has agreed that knowledge of the breach or violation just means you need to know the constituent facts. Counsel, I'm confused. Do you agree that Congress can make a mistake of law, lack of it, some sort of defense or part of an element? Yeah, either they can make it a defense or they can make it an element so it wouldn't get... So they can do this. And they didn't hear about that. And I guess I'm still stuck where Justice Kavanaugh is. Raheif, why isn't this more or less identical to Raheif? The knowledge of the information contained in the application or whatever exact information is false. And some of that is legal. Some of it's factual. And, you know, Justice Breyer's bird example is a delightful one. So there's a line. This is the position we would take. And certain things are obviously on one side of the line. And I'll give you examples from the Copyright Act. So Section 109 v. 3 says the violator was not aware that its acts constituted a violation of Section 1002. That obviously is Congress displacing the presumption. Our point is this is not on that side of the line. And you ask, well, why is it different from Raheif? I still haven't really heard an explanation that I understand, at least on that one. Well, so Raheif required that you know that you were unlawfully in the United States. That can only mean one thing, which is you had broken a specific law. And so information being inaccurate, it can be inaccurate for many reasons. Exactly. It can be inaccurate for reasons of mistake of fact or mistake of law. We don't know what an oral looks like or we saw something different. And so our core position is not that it couldn't mean what my friend says, but that it's not sufficiently clear. Okay, so it could mean this. Congress can do this. And now we're just arguing about the clarity with which Congress needs to do this. Yeah, well, it's a textual... Is there a heightened clarity requirement you'd have us impose here? I don't think heightened clarity is required. I think we look at what Congress typically does, including in the Copyright Act. We see many examples of willfulness. We see many examples where the specific law is described. This looks like McFadden. And I want... Let's talk about McFadden for a second. Same thing. Application of law to fact. The Controlled Substance Act required knowledge that something is a controlled substance. This court distributed the word knowledge to all of the elements. Yet this court held that if the defendant knew the identity of the substance that he possessed, say heroin, that was enough because ignorance of the law is typically no defense. This, we submit, is on this side of the line. And I want to explain why, but I want to talk about Liparota first. So Liparota is really not a particularly powerful case, I think, for them because not only did it specifically mention the law, but it invoked the rule of lenity. Liparota... That's after it goes through the full textual analysis, however, kind of the icing on the cake for us. I don't know how much of it is icing and how much of it is kind of core... Okay. But it goes through the analysis pretty carefully and there is a dissent. Justice Brennan wrote the majority. It's pretty careful. Let me point up a big picture as you think through because I think one thing that is pretty much indisputable is there is a line. Congress can do it. And the question is, did they hear? And so I would say two things as to why I think we're on the right side of the line. So the first one is my friends offer no example of a statute with text that looks anything like this where the presumption was displaced. I think that if we look for examples, I'll give them Lipperota. If you want, I'll give them Rahace. But you look at example after example on the Copyright Act and it's a very different language that applies. Can we talk about then the real world implications of your position because I think that helps get at some of this dissection of the precedent. Yeah. So your position is even if someone is confused about the legal requirement of what unit of publication it is, honestly confused, truly confused, so there's no issue of lying, that they, when their copyright's infringed, they lose their ability to recover simply because they were honestly confused about a legal requirement and lose, in this case, you know, some hundreds of thousands of dollars. And the question is what sense does that make if we're in the realm of gray area? I think it makes a lot of sense in two ways, in both directions. So let me take each of them. In terms of why Congress would want it, it makes sense. And in terms of why it shouldn't trouble you, it makes sense. I'll take them in that turn. So Congress, we submit, because this is going to apply to constructive knowledge, I don't know how much time I'll have to get to it, retains its presumption and intended constructive knowledge to incentivize diligence and full candor because as Aramiki explained, there are serious systemic harms that come from materially inaccurate registration. This statute is only triggered when it's materially inaccurate. It floods the public record with misinformation, bundling, chronically bundling group registrations without paying the fees, deprives the office of money to run, this chills creators. There's a lot of reasons to want to do it. So let me get to the core part of your question, which is, oh, but is it fair? What about someone who had this belief? I would say two things. First, as a practical matter, diligent applicants don't face any meaningful risk of this because this is an interactive process where there are specialists at the office ready to answer questions and provide written guidance on almost every aspect of the form. If you provide relevant facts and correspond... I'm sure there are probably two sides to the story about that and how useful and how information you might get and the other side of the story, of course, is what is a complicated process. There are volumes of important questions here that even the Solicitor General can't fully... Understandably, understandably, no human alive can probably understand the whole of this chapter. And in that world, in a world of intense regulation, why I think what Justice Kavanaugh is getting at is, how would it be unreasonable or untoward to read Congress's statement to mean what it said here? I understand that there are good policy arguments on your side. I'm not disparaging that. But if there are good policy arguments on both sides and one might take a different view than you about the helpfulness and the ready availability of legal advice from the government to affected individuals, then what? So I'll say three things. So the first is, I don't know that I accept the premise this is what they said and I want to get to the text in a minute. But the second thing I'll say is, there's a materiality protection here that I think is important. You can, I can spot you everything that you just said, that it's complicated, maybe we don't know, et cetera. If you fully disclose facts to the Copyright Office, it is inconceivable to me that if they don't deny your application, which they regularly do, they regularly ask questions and say, oh, we don't think it was published, et cetera, that when they're asked, well, was it material? Would we have behaved differently? That they're going to say it was. So I think there's a meaningful protection. But the more, if you disagree with that, my more core answer is, this is exactly the same that this operates in a number of settings, including German. Take German. German was a case where there was a circuit split. There was on-point circuit authority of the position that the defendant took. And the court still had no trouble finding that mistakes of law don't count because it was looking at the overall context of the statute. And so that kind of takes me to the first part of your question that I wanted to answer, which is, what did Congress say? Let's look at 411b1 and the word knowledge. Our position is that you have to look at this in context. My friends say, well, it has ordinary meaning. Knowledge means actual awareness. I don't agree with that. Knowledge is a legal term that court after court have held always requires context to determine what's included on the continuum from actual to constructive. The context here is incredibly powerful. 411 is one of five registration provisions. These are sections 408 to 412. If you look at how they work, they establish a formal process that's not just to protect copyright owners, not just to protect litigants, but to promote systemic objectives. You have to seek approval. That promotes copyright quality. Well, if a material inaccuracy caused something that wasn't appropriately or registrable to be registered, that deteriorates copyright quality. You have to deposit a copy of your work that builds a public library. You have to pay a fee. And if you do all of those things promptly and correctly, you get a litigation privilege. And so our position in terms of looking at that context, when you have a word like knowledge that does not have, I would submit, the ordinary meaning that it's what you subjectively think, why would the government in that regime confer those privileges on an unreasonable error? One of the things Mr. Rosenkranz says is that this is a system that is meant for people to be able to do it themselves, right? You don't want to have to hire some large law firm if you think you've got a, you know, clever, I don't know, something that should be copyrighted. You can do that yourself. But it's a system that relies on the honor system where the office doesn't independently verify information, and it's a system where when you have a constructive knowledge rule, that just means reasonable under the circumstances. So all a constructive knowledge rule would say is if a reasonable applicant, obviously Google is treated differently than a poet or artist because that's an applicant with heightened knowledge, et cetera, if a reasonable, regular copyright applicant would not have believed assuming you reject my object argument, would not have believed that the ultimate representation was accurate, they don't get these special privileges. So a layperson who doesn't really know much about copyright but knows how to, you know, write a book or whatever it is that's going to be copyrighted, they don't have to know anything? Is it simply a new or should have known? It's new or should have known. And it's very important here, Mr. Chief Justice, because the half a million claims are being registered each year. And you don't register a work, you register a claim. Meaning, the office relies on you as the applicant to pick the work. This goes to some of the questions you were asking, Justice Alito, of does it matter that it's a group or not a group? Of course it matters. Registering a collection has a different criteria, you get different rights. All that's true. Just to go back for a second to the Chief Justice's question, looking at your Mikey briefs, I mean they're worried about copyright trolls. I'm worried about that. That's a problem. But if you think about it, Joe Smith, who's been down in the basement for 40 years writing the history of his dog's life, you see, is likely to be much more able to legitimately claim that he didn't know the law, you know, on something than a copyright troll. If there's one group of people that it's going to be tough to make out a claim that they didn't really know the law, it will be the real copyright trolls because they say a breast of everything. So if that was Congress's effort, that would argue that they really didn't really, the opposite of what you said. Well, as a practical matter, I don't know that I agree with you and here's why. Trolls know less? So I don't think it matters whether they know less or more. Here's what I think matters. This has only been used 23 times in 13 years. If you go look at those 411B referral letters, look to see whether it's being used against repeat players. Repeat players have a number of techniques that they can use to try and game the system and when the law is changing or when things are complicated, a constructed, an actual knowledge willful blindness standard is very hard to satisfy. It's putting a burden on defendants to say, oh, you concoct as a sophisticated plaintiff any argument as to why, oh, I thought I could group things together because of that and you lose. Okay, you lose one, you come up with something better the next time and I think that's what our amici, whether it's nationally, the National Retail Federation or in California or the law professors are explaining. This is a real problem in a narrow segment of the market but if you either, by rejecting the object presumption or by refusing a constructive knowledge standard, if you don't allow it to proceed in this fashion, what it's doing is taking away a very powerful tool and this is not a policy argument. I think the text in context, the word knowledge alone, as part of a regime that is talking about a litigation privilege is absolutely critical. Two questions. Sorry. Two questions. One, doesn't the SG's blending, or not blending but bridging of the reasonableness requirement with the knowledge requirement and the footnote I keep mentioning, doesn't that give you half a loaf at least? I mean, I didn't quite understand how the blending operates because... Well, I'll tell you my view for what it's worth. You know, there are a whole bunch of tools in the toolkit to ascertain whether someone is lying. I agree. Willful blindness is one of them. But, there's enormous daylight... It's broader than willful blindness. Other tools. You know, it's ridiculous to think that... Circumstantial evidence, of course. All of that I understand and I agree with. My point is, there is still enormous daylight between... Maybe your point is with trolls or people who are not sophisticated that will work. I don't know. But I can tell you at a broad level, there is enormous... There's enormous daylight between I had a position and it was honestly held and it was totally unreasonable. Either because I didn't... I didn't... I'm an idiot. I didn't do the investigation I should but well short of willful blindness and what the government and Unicode's rule would sweep in. And so, I think in trying to assess what Congress meant, that daylight is important. If you think that the statute was intended only to catch liars, then we should lose. Second question. The policy arguments back and forth. Solicitor General is coming on the side opposite you. What do you make of that? What I make of that is there are first principles on questions of... It may not feel sexy to a lot of people, copyright, IP, but there are very strongly held views on questions of formality and whether it makes sense. And if you look from administration to administration, the views of the United States have changed dramatically. And so, it's not at all surprising to me that an administration and a current copyright register who has been a tremendous proponent of reducing formalities believes, I'm sure honestly, that if you're a hammer, everything looks like a nail. If you're an anti-formalist, Congress couldn't possibly have meant this. But prior administrations, including in the Fourth Estate case, if you look at the position the government took there on a lot of these, what you're calling policy issues, it's precisely backwards. So, I think ultimately, it's the text, it's the context, that's what should guide this court. Thank you. Thank you, counsel. You need to get back up. I forgot that you're going down the line. Yeah. You said there's only been 23 of these referrals. That really surprised me because how many millions of copyright applications do you have? Well, there's 500,000 claims that are registered a year. Okay. I think it's not surprising at all because think about how it plays out. This only applies when there's litigation. It only applies when the defendant, through discovery or something in the litigation, like learns that there was an inaccuracy. And it only applies when the defendant has some incentive to do something about it. It would only make sense if the defendant suppressed this if you thought it was material because otherwise, you're going to make this point even if you can get referral to the office, they're going to say it was immaterial, it doesn't help you. So, it's not at all surprising that it only happens a few times, but it happens in the instances where it matters. Justice Thomas? Justice Breyer? No more questions? Justice Kavanaugh? No. Okay. Thank you, counsel. Rebuttal? Mr. Rosenkranz? Yes, thank you, Mr. Chief Justice. First on the merits, Mr. Stris says pretty forthrightly that the statute is ambiguous. I don't think it is. I think it's pretty clear, especially the structure of the statute. But what he hasn't talked about is how you break the tie. There is a presumption. He hasn't said almost anything about a hundred years of common law in which no court ever did what H&M is asking this court to do. Mr. Stris says, oh, but those cases didn't involve knowledge of the law? Almost every one of the cases we lay them out for seven pages of our brief are about mistakes of law. Lamps Plus, ECUS, Masquerade, Bucott, Advisors, and Taylor. Second, Mr. Stris cites cases about other statutes with other language. He barely looks at this statute with this language. I agree with Justice Kavanaugh and Justice Breyer. Look at this statute. It's so much clearer than all of the other ones. Justice Gorsuch is right about Rehaith. That statute did not apply knowledge to the particular element, which was about the status of the individual. It said, knowingly violating a prohibition, and then you've got to go look at the status of the individual who's not allowed to possess a gun. Chief Justice, you asked about the 23 referrals. Those 23 referrals are going to be 23,000 or hundreds of thousands if the rule is what H&M says it is. Now, all of a sudden, it will be a sport for infringers to try to find legal errors or any other sorts of errors in copyright applications, especially willful infringers who, like H&M, actually have no other defense. There were a couple of questions, including Justice Sotomayor's question early on about copyright trolls. I just have to say, for reasons that Justice Breyer gave, this case has nothing to do with disciplining trolls. H&M has no evidence that trolls are especially likely to make mistakes on copyright applications. I agree with Justice Breyer that, if anything, they would be less likely to make mistakes. Now, if there is a problem with baseless infringement suits, defendants have all the tools they could possibly want, whether by showing that the design is unoriginal, that the defendant did not actually copy, or that the accused design is not substantially similar. And for bad faith suits, they will get attorney's fees. I mean, at the end of the day, Congress followed a century of precedent in making a clear policy choice as to who should win in a competition between an artist, who, as the district court here found, made a good faith mistake, and a serial and willful infringer. If the court has no further questions, respectfully request that the court revert. Thank you, counsel. The case is submitted.